THE PEOPLE OF THE STATE OF NEW YORK ex rel. MOODY ENGINEERING Co., INC., Relator, *v.* WALTER G. HAMILTON, as Treasurer of the County of Rockland, Respondent.

(Supreme Court, Rockland Special Term, September, 1919.)

Mandamus — when peremptory writ of, denied — boards of supervisors have no power to borrow money or to issue negotiable paper except in strict compliance with the statute — County Law, § 45(3) — General Municipal Law, § 5.

A board of supervisors has no inherent implied or incidental power to borrow money or to issue negotiable paper in any manner except in strict compliance with the statute.

The board of supervisors of Rockland county, in compliance with section 45 of the County Law, pursuant to which, as it stood in 1915, it had submitted to the voters the question of the establishment of a county hospital for tuberculosis at a cost of $50,000, which proposition was carried, purchased real property and built, furnished and equipped a tuberculosis hospital but at an expense far exceeding that originally deemed necessary, and for the purpose of providing funds to pay the expense incurred, issued bonds to the amount of $80,000, the proceeds of which have been expended. The board of supervisors, claiming power to make a temporary loan upon the credit of the county for $40,000 additional, issued to relator drafts in payment of bills for work, labor and services

performed in the construction of their hospital. *Held*, that while the board of supervisors had power to raise said $40,000 or any other sum necessary in the matter, the same could only be raised by a bond issue, as provided by section 45(3) of the County Law.

The proposal to raise the $40,000 by temporary loan, which was not included in the tax budget, was in violation of section 5 of the General Municipal Law, and the county treasurer was justified in his refusal to honor the drafts issued to relator, and an application for a peremptory writ of mandamus to compel payment of said drafts will be denied.

APPLICATION for a peremptory writ of mandamus.

Edward Maxson, for relator.

Thomas Gagan, for respondent.

SEEGER, J.   The relator has applied for a peremptory writ of mandamus to compel the respondent, the county treasurer of the county of Rockland, to pay seven drafts, aggregating $8,920.14, made by the board of supervisors of the county of Rockland, which drafts were drawn in payment of bills for work, labor and services performed in the construction of a tuberculosis hospital in Rockland county. The respondent has refused to honor the drafts. It appears that in the year 1915, pursuant to the provisions of section 45 of the County Law as then in effect, the board of supervisors caused to be submitted to the voters of the county the question of establishing a county hospital for tuberculosis, fixing the sum of money deemed necessary for the establishment of such hospital at the sum of $50,000. The proposition was carried, and thereupon the board of supervisors, in compliance with said section 45 of the County Law, purchased real property and built, furnished and equipped a tuberculosis hospital at an expense far

exceeding the sum of $50,000 originally deemed necessary. For the purpose of providing funds to pay the expense of such hospital they issued bonds to the amount of $80,000, the proceeds of which have been entirely expended, and they now propose to make a temporary loan upon the credit of the county for the sum of $40,000 additional. Such temporary loan is not applied for in anticipation of the taxes of the current fiscal year and is not included in the budget thereof. The board of supervisors, claiming to have power to make such temporary loan, issued to the relator Moody Engineering Co., Inc., the drafts in question, expecting the respondent to pay them from the proceeds of the proposed temporary loan. The respondent bases his refusal to honor the said drafts upon the contention that the board of supervisors has no right to expend more than the sum of $50,000 appropriated by the referendum, also contending that said board of supervisors had no authority to make the said temporary loan of $40,000, and that therefore he has no funds in his hands with which to pay the said drafts.

The legislature first provided for the establishment of county hospitals for tuberculosis by the enactment of chapter 341 of the Laws of 1909, being section 45 of the County Law, and thereby the board of supervisors of any county was authorized to establish such hospital by a majority vote of such board and to purchase and lease real property therefor or acquire such real property by condemnation proceedings and to erect all necessary buildings and make all necessary improvements and repairs; to cause to be assessed, levied and collected such sums of money as they should deem necessary for such purchases. And as the statute was originally enacted the board of supervisors had absolute power to expend any

sums of money that they might deem necessary for the establishment of such hospital. The statute was amended by the enactment of chapter 166 of the Laws of 1913, by the insertion of a provision providing that after the presentation of a petition in a proceeding for the condemnation of lands for-the purposes of such hospital the said board of supervisors shall be and become seized of the real property described in said petition to be acquired; and containing other provisions relating to the method of procedure in such condemnation proceedings. Said section 45 was further amended by chapter 323 of the Laws of 1914 and chapter 132 of the Laws of 1915, by adding thereto a provision providing that such boards of supervisors shall have authority to submit the question of establishing such hospital to the voters of the county, but neither of such amendments in any way limited or abridged the authority of the board of supervisors granted in the original act. Therefore if the authority of the board of supervisors of the county of Rockland was limited and defined by the terms of said section 45 of the County Law as in force in the year 1915, it is my opinion that they were authorized to expend such sums of money as they should deem necessary for suitable lands, buildings and improvements for said hospital, and for the maintenance thereof and for all other necessary expenditures therefor, and also to borrow money for the erection of such hospital and for the purchase of a site therefor on the credit of the county, and to issue county obligations therefor. County Law, § 45, as amd. by Laws of 1915, chap. 132.

The action of the board of supervisors in issuing bonds in the sum of $80,000 for the necessary expenses of purchasing the lands and the erection of buildings and other necessary expenses of said hos-

People ex rel. Moody E. Co., Inc., *v*. Hamilton. **589**

Misc.]      Supreme Court, September, 1919.

pital was legal. I am also of the opinion that the board of supervisors has power and authority according to the provisions of section 45 of the County Law to raise the additional sum of $40,000 or any other sum that may be necessary for the establishment and completion of said hospital and the maintenance thereof, but the same must be raised in such manner as the board of supervisors might do for other county purposes. County Law, § 45, subd. 3. The board of supervisors has no inherent, implied or incidental power to borrow money or to issue negotiable paper in any manner except in strict compliance with the statute. *Parker* v. *Board of Supervisors of Saratoga,* 106 N. Y. 394. And for the purpose of preventing the practice by boards of supervisors of borrowing money on temporary loans and so involving the counties in debt, section 5 of the General Municipal Law was enacted, which provides as follows: '' Moneys shall not be borrowed by a municipal corporation on temporary loan, except in anticipation of the taxes of the current fiscal year, and for the purposes for which such taxes are levied, and shall not be in excess of the amount of such taxes. Such loans shall be payable out of the taxes on account of which such loans are made, and in no case shall interest run on any such loan after such taxes are paid into the treasury of the corporation.''

It is evident in this case that when the matter was submitted to vote by the board of supervisors the expense of the erection of the hospital was very much underestimated, due perhaps, in part at least, to the fact that the cost of labor and materials was increased to an enormous extent by reason of the conditions created by the war. It is always difficult to accurately estimate the expenses of the erection of buildings of unusual character in advance of con-

Surrogate's Court, Madison County, September, 1919. [Vol. 108.

tracting, and the legislature never intended to hamper boards of supervisors in the erection of hospitals of this kind by requiring them to remain within the limits of an original estimate of cost. There is an entire absence of any charges of fraud or corruption or bad faith in connection with this work. The questions presented are solely questions of the authority of the board of supervisors.

The county treasurer was justified in refusing to honor the drafts for the reason that the board of supervisors had not raised the money for the payment thereof by a bond issue and because they proposed to raise it by a temporary loan in violation of the provisions of section 5 of the General Municipal Law above quoted.

The application for writ of mandamus is, therefore, denied, with costs.

Application denied, with costs.